**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MARK ANTHONY GARCIA and AMY ELLEN GARCIA, individuals;**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GENERAL MOTORS LLC; a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,**<br><br>**Defendants.** | **1:18-cv-01313-LJO-BAM**<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>**(Doc. 4)** |

## I. <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if

1

Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. INTRODUCTION

Plaintiffs Mark Anthony Garcia and Amy Ellen Garcia bring this action against Defendants General Motors, LLC ("GM"), and Does 1-10. This action arises out of Plaintiffs' purchase of a 2011 GMC Sierra 1500. Plaintiffs allege causes of action for violation of the Song-Beverly Consumer Warranty Act and fraudulent inducement. GM moves to dismiss the three claims for fraudulent inducement for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, this Court GRANTS with leave to amend dismissal of Plaintiffs' fraudulent inducement by concealment, fraudulent inducement by intentional misrepresentation, and fraudulent inducement by negligent misrepresentation causes of action.

## III. BACKGROUND

**A.    Factual Allegations**

On March 29, 2011 Plaintiffs purchased a new 2011 GMC Sierra 1500, VIN: 3GTP1WE08BG229239 (the "Sierra"). Doc. 1-1 ¶ 8. Express warranties accompanied the sale of the vehicle by which GM undertook to preserve or maintain the utility or performance of the Sierra, or to provide compensation if there was a failure in such utility or performance. *Id.* The Sierra was equipped with a Generation IV 5.3 Liter V8 Vortec 5300 engine ("Vortec 5300 engine"). *Id.* ¶ 15.

On or around December 28, 2016, Plaintiffs brought the Sierra to an authorized GM repair facility. *Id.* ¶ 122. Plaintiffs complained the check engine light was on and the vehicle had reduced power. *Id.* This was Plaintiffs' fourth complaint and repair for reduced power. *Id.* During previous repair attempts, the technicians attempted to resolve the loss of power issues by replacing the accelerator pedal sensor, but Plaintiffs allege these previous repairs were ineffective. *Id.* During this repair, the

2

technician "replaced a connector and pigtail, cut out the damaged wire insulation and butt connectors, crimped and soldered the connection installed a connector, and cleared the codes." *Id.* Plaintiffs allege that this was the first out of warranty repair for continued engine problems, leading them to realize GM "had failed to conform [the Sierra] to the terms of the express warranty within the warranty period." *Id.* Plaintiffs allege they determined the problems "must be related to the Oil Consumption Defect, which has been known to cause a loss of power." *Id.*

Motor oil functions as an essential lubricate for the moving parts in internal combustion engines, has important cleaning and sealing functions, and serves as an important medium for dissipating heat throughout the engine. *Id.* ¶ 20. As a result, vehicles need the proper amount of engine oil for their engines and related parts to function properly and safely. *Id.* Plaintiffs allege that the Sierra's Vortec 5300 engine consumes an "abnormally and improperly high quantity of motor oil," resulting in "low oil levels, insufficient lubricity levels, and corresponding internal engine component damage." *Id.* ¶ 19. Plaintiffs allege multiple factors—including defects in the Vortec 5300 engine's piston rings, Active Fuel Management ("AFM") system, Positive Crankcase Ventilation ("PCV") system, and Oil Life Monitoring system—contribute to the excessive oil consumption problem in the Vortec 5300 engine. *Id.* ¶¶ 22-29. Plaintiffs refer to the combination of these factors, and the resultant excessive oil consumption, as the "oil consumption defect." *Id.* ¶ 22. Plaintiffs allege that GM was aware of the oil consumption defect at the time of sale of the Sierra to Plaintiffs, GM did not disclose the defect to Plaintiffs, and GM actively concealed the defect's existence from Plaintiffs. *Id.* ¶¶ 83-112.

**B.** **Procedural Background**

Plaintiffs filed the Complaint on August 20, 2018 in the Tulare County Superior Court. Plaintiffs brought claims for (1) Violation of Song–Beverly Act Beach of Express Warranty; (2) Violation of the Song-Beverly Act – Breach of Implied Warranty; Violation of the Song-Beverly Act – Breach of Section 1793.2; (4) Fraudulent Inducement – Concealment; (5) Fraudulent Inducement – Intentional Misrepresentation; (6) Fraudulent Inducement – Negligent Misrepresentation. GM timely

3

removed the case to this Court on September 21, 2018. GM filed the instant motion to dismiss on September 28, 2018. Doc. 4. Plaintiffs opposed the motion. Doc. 5. GM filed a reply. Doc. 6. Pursuant to Local Rule 230(g), the Court determined that this matter was suitable for decision on the papers and took it under submission on October 29, 2018. Doc. 7.

## IV. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the opposing party's pleadings. Dismissal of an action under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the pleading party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The inquiry is generally limited to the allegations made in the complaint. *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

4

elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

Furthermore, Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud[.]" Fed. R. Civ. P. 9(b). This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*. Rather, the party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud as much as it is meant to give defendants notice of the claims asserted against them. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). When a party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper. *See Vess*, 317 F.3d at 1107("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.").

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## V. <u>DISCUSSION</u>

GM moves to dismiss the three fraudulent inducement causes of action on the grounds that: (1) each claim is barred by the statute of limitations; (2) each claim violates the economic loss rule; and (3) the Complaint fails to plead sufficiently particularized allegations to support each claim. Plaintiffs contend that the claims are timely, do not violate the economic loss rule, and that the factual allegations in the complaint are sufficient.

### A.     <u>Statute of Limitations</u>

A plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action. *Nogart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999). The general rule for defining the accrual of a cause of action sets the date as the time when, under the substantive law, the wrongful act is done or the wrongful result occurs, and the consequent liability arises. *Id.* at 398. In California, the statute of limitations for fraud is three (3) years. Cal. Code Civ. Proc., § 338(d). Whether the statute of limitations bars a claim is generally a question of fact. *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1320 (2007) (citation omitted). The statute of limitations issue becomes a question of law, however, when the facts yield only one reasonable conclusion. *Id.* (citations omitted).

GM argues that Plaintiffs' three fraudulent inducement claims accrued on March 29, 2011, the date Plaintiffs were allegedly fraudulently induced into purchasing the Sierra, and thus the statute of limitations expired on March 29, 2014.[1] Plaintiffs counter that the statute of limitations was tolled until at least December 28, 2016, because 1) Plaintiffs did not discover the defect until December 28, 2016; 2) a class action of which Plaintiffs were putative members was filed; 3) GM fraudulently concealed the Sierra's defect; and 4) equity demands tolling the statute of limitations. GM argues that none of these

---

[1] GM does not move to dismiss Plaintiffs' non-fraudulent inducement claims on the basis of the statute of limitations, or any other grounds.

exceptions apply. For the reasons described below, the Court finds Plaintiffs failed to plead sufficiently a basis for tolling the statute of limitations and thus Plaintiffs' claims as-pleaded expired on March 29, 2014.

### 1. Discovery Rule

Plaintiffs first claim the statute of limitations was tolled by their delayed discovery of the oil consumption defect in the Sierra. The delayed discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). The statute of limitations begins to run when "the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Clark v. Baxter Healthcare Corp.*, 83 Cal. App. 4th 1048, 1055 (2000) (*quoting Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, (1988)); *Fox*, 35 Cal. 4th (Discovery rule tolls statute until "until the plaintiff has, or should have, inquiry notice" thereof); *see also Norgart*, 21 Cal. 4th at 397-98. A plaintiff has reason to discover the injury when she has "notice or information of circumstances to put a reasonable person on *inquiry*." *Jolly*, 44 Cal. 3d at 1110-11 (emphasis in original) (internal quotation marks omitted) (quoting *Gutierrez v. Mofid*, 39 Cal. 3d 892, 896-97 (1985)). "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox*, 35 Cal. 4th at 808.

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id*. at 808 (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (1999)); *E–Fab, Inc.*, 153 Cal. App.4th at 1319 (same). The burden is on plaintiff to plead facts to show the inability to have made earlier discovery. *Samuels v. Mix*, 22 Cal. 4th 1, 14 (1999). "The discovery related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner." *Cansino v. Bank of Am.*, 224 Cal.

App. 4th 1462, 1472 (2014).

Plaintiffs allege that they first discovered the facts giving rise to their fraud causes of action on December 28, 2016, when they brought the Sierra in for its first out-of-warranty repair. Doc. 1-1 ¶ 122. Plaintiffs argue that they could not have discovered the irreparable defects previously because GM failed to disclose the existence of the alleged oil consumption defect and represented that prior repairs fixed the low power issues, and all other operative facts regarding the irreparable defect were concealed in confidential and privileged documents. *Id.* ¶¶ 121-125. GM argues that Plaintiffs failed to allege facts showing how these individual Plaintiffs discovered the alleged "oil consumption defect" regarding the Sierra, and Plaintiffs further failed to allege specific facts showing they were not on inquiry notice and could not have reasonably made the discovery sooner.

Plaintiffs failed to plead facts sufficient to support application of the delayed discovery rule to their fraudulent inducement causes of action. First, Plaintiffs plead minimal facts regarding the time or manner by which they discovered that the oil consumption defect was the source of the problems in the Sierra. *Fox, Inc.*, 35 Cal. 4th at 808; *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *5 (C.D. Cal. Oct. 3, 2014) (delayed discovery rule inapplicable where plaintiff's complaint "contains no specific allegations concerning how or when she first discovered the defect."). Plaintiffs offer only bare statements that the December 28, 2016 repair "was the earliest date that Plaintiffs could have had any sort of notice of the facts which give rise to Plaintiffs' fraud causes of action," and "[a]ll of the previous accelerator pedal sensor repairs were ineffective, and Plaintiffs realized that the problems must be related to the Oil Consumption Defect, which has been known to cause a loss of power." Doc. 1-1 ¶ 122. Plaintiffs similarly allege that the December 28, 2016 repair "was Plaintiffs' first out of warranty repair for continued engine problems, which led them to realize that Defendant had failed to conform the Subject Vehicle to the terms of the express warranty within the warranty period." *Id.* The facts pleaded regarding the December 28, 2016 repair do not specifically describe any defects related to motor oil or motor oil consumption; they only note in conclusory

language that the first out of warranty repair for power problems caused Plaintiffs to realize there was an oil consumption defect. Plaintiffs fail to allege, for example, that any tests related to oil consumption were performed causing them to realize the source of the Sierra's power problems. *See, e.g.*, *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1322 (C.D. Cal. 2013) (plaintiffs properly pleaded delayed discovery where first notice of potential oil consumption defect came after learning results from oil consumption test performed by mechanic). Plaintiffs do not explain who told them the power problems were related to an oil consumption defect, how they otherwise learned of the oil consumption defect in their vehicle if they were not told by an individual, or the timing of learning that their engine problems were related to the oil consumption defect. And Plaintiffs do not plead that they received any information during the December 28, 2016 repair regarding the combination of defective components they allege cause the oil consumption defect —the PCV system, the AFM system, and piston rings. *See* Doc. 1-1 ¶¶ 22-29, 33. Plaintiffs' allegations regarding their discovery of the Sierra's defect simply do not discuss excessive oil consumption at all, much less Plaintiffs' discovery of the oil consumption defect in their vehicle.

Similarly, Plaintiffs offer little detail of the manner or timing of how they learned of GM's alleged fraud in concealing the oil consumption defect and making misrepresentations to Plaintiffs regarding the Sierra. Plaintiffs only offer that, upon the first out-of-warranty repair for engine problems, they realized that "the problems must be related to the Oil Consumption Defect." At best, Plaintiffs' Complaint implies that this realization of the oil consumption defect was also the moment of realizing GM's alleged concealment and misrepresentations. But Plaintiffs offer no information on why the first out-of-warranty repair caused them to realize that the four complaints regarding engine power "must be" related to oil consumption. Plaintiffs' Complaint provides no facts elucidating the manner or timing of how they learned of GM's alleged concealment and misrepresentations. At best, Plaintiffs offer conclusory allegations that realization of a non-specific engine defect caused them to realize that it was the oil consumption defect which caused them to realize GM had made false representations regarding

and/or concealed the existence of this defect. Plaintiffs do not offer sufficient support to fill the factual gaps in this chain of reasoning, either explicitly or implicitly.

Second, Plaintiffs failed to plead facts showing their "inability to have discovered the necessary information earlier despite reasonable diligence." *Fox*, 35 Cal. 4th at 808. Plaintiffs allege that on December 28, 2016, the Sierra was brought in for repairs due to the check engine light and the Sierra's reduced power. Doc. 1-1 ¶ 122. Plaintiffs further plead that from 2011-2016, the Sierra was brought in for repair on three other occasions for the same low power problems. Plaintiffs allege that on each of the three visits, the same repair was performed and ultimately unsuccessful. *Id.* Plaintiffs argue that it was only on the fourth visit, on December 28, 2016, that they were on notice of a potential defect because this was the first out-of-warranty repair, which caused Plaintiffs to realize that GM failed to conform the Sierra to the terms of the warranty within the warranty period and committed fraudulent inducement. *Id.*

But Plaintiffs provide scant detail regarding the previous three repairs to explain why they were not on inquiry notice prior to the December 28, 2016 repair that the vehicle had an oil consumption defect. Plaintiffs do not sufficiently plead why *this* complaint of low power problems, as opposed to the three prior complaints, put them on notice of the alleged oil consumption defect and GM's fraud regarding the same. A reasonable person would be on inquiry notice when the same repair for the same problem is ineffective three times in a row. "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly*, 44 Cal. 3d at 1111; *see also Clemens*, 534 F.3d at 1024 ("A plaintiff must affirmatively excuse his failure to discover the fraud...by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.") (quoting *Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118, 129 (1975)); *Yi v. BMW of N. Am., LLC*, No. 2:17-CV-06467-SVW, 2018 WL 3359016, at *6 (C.D. Cal. May 24, 2018) (noting courts have

found a plaintiff was on notice of his claims for statute of limitations purposes after as few as two or four repair visits for the same problem."); *Ehrlich v. BMW of North America*, *LLC*, 801 F. Supp. 2d 908, 925 (C.D. Cal. 2010) (Plaintiff on notice of claims after two repair attempts); *Torres v. Ford Motor Co.*, No. 117CV01453DADSKO, 2018 WL 2088268, at *3 (E.D. Cal. May 4, 2018) ("The court concludes from these allegations that by . . . the end of the five-year warranty and well after the time plaintiff had sought repeated engine repairs—plaintiff possessed information sufficient to place him on inquiry notice of the vehicle's engine problems."); *Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL 2552266, at *4 (N.D. Cal. June 4, 2018) ("[Plaintiff] fails to plead why she did not discover the defect until 2015 when she purchased the car 10 years earlier in 2005, and received several repairs seemingly related to the defect while on warranty between 2005 and 2010."). The fact that repairs are performed during the warranty period do not alleviate a plaintiff's inquiry notice. *See Torres*, 2018 WL 2088268, at *3; *Finney*, 2018 WL 2552266, at *4.

Plaintiffs' allegation that repair centers assured Plaintiffs that the low power issues were resolved during previous visits is not sufficient to alleviate the inquiry notice. *See Galvez v. Ford Motor Co.*, No. 217CV02250KJMKJN, 2018 WL 4700001, at *5 (E.D. Cal. Sept. 30, 2018) ("The repeated appearance of a check engine light in a brand-new automobile arguably alerts its owner that something is amiss, even where the dealer repeatedly represents that it has resolved the issue."); *Durkee v. Ford Motor Co.*, No. C 14-0617 PJH, 2014 WL 7336672, at *7 (N.D. Cal. Dec. 24, 2014) (reassurances that vehicle's problems would be repaired insufficient where plaintiffs failed to allege how they were prevented from discovering the defect because of said reassurances, and, in any event, such allegations would not be plausible given repairs required during the warranty period, which should have put plaintiffs on notice of the defect). Three previous visits for the exact same complaints, with the same unsuccessful repairs, would put a reasonable person on notice of a potential injury. *See id.* And, in any event, Plaintiffs do not allege the circumstances of these reassurances with sufficiently particularized detail, failing to plead when these repairs happened, who provided the reassurances, the content of the reassurances, and why

the reassurances placated Plaintiffs even after multiple complaints for the same problem. Thus, Plaintiffs fail to plead why, in the exercise of reasonable diligence, they could not have discovered the defect earlier. *Id.*; *Nan Hui Chen v. Deutsche Bank Nat'l Tr. Co.*, No. 13-CV-3352 YGR, 2014 WL 6668785, at *9 (N.D. Cal. Nov. 24, 2014), *aff'd,* 713 F. App'x 579 (9th Cir. 2018) ("plaintiff has pleaded no facts to demonstrate what diligence she ultimately undertook to discover the defendants' concealment . . . and why her ultimate discovery occurred as quickly as possible"); *Herremans*, 2014 WL 5017843, at *5 (delayed discovery rule inapplicable where complaint failed to plead why, in the exercise of reasonable diligence, she could not have discovered the defect earlier."). Plaintiffs do not sufficiently plead a basis for tolling via application of the discovery rule.

### 2.    Fraudulent Concealment

Next, Plaintiffs argue that the statute of limitations was tolled by the doctrine of fraudulent concealment. "A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 744 (2007); *Philips v. Ford Motor Co.*, 2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016) ("A number of other courts have found that, when properly pleaded, fraudulent concealment tolls the statute of limitations for claims brought under the Song-Beverly Act.") (collecting cases). However, "[w]hen a plaintiff alleges the fraudulent concealment of a cause of action, the same pleading and proof is required as in fraud cases: the plaintiff must show (1) the substantive elements of fraud, and (2) an excuse for late discovery of the facts." *Id.* at 900 (citation omitted). The second element requires the plaintiff to allege "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Community Case v. Boatwright*, 124 Cal. App. 3d 888, 899 (1981). "Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b)." *Finney*, 2018 WL 2552266, at *3 (quoting *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *8 (N.D.

Cal. Mar. 12, 2014), *order corrected on denial of reconsideration*, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014)).  Thus, Plaintiffs must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct.  *Vess*, 317 F.3d at 1106.  And "[a]bsent a fiduciary relationship, nondisclosure is not fraudulent concealment—affirmative deceptive conduct is required." *Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 874 (2004); *Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) ("Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure"); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1100 (C.D. Cal. 2009) (under California law, "[a] plaintiff alleging fraudulent concealment must establish that his failure to have notice of his claim was the result of the affirmative conduct by the defendant").  Moreover, "the plaintiff must point to some fraudulent concealment, some active conduct by the defendant "*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008); *Jaeger v. Howmedica Osteonics Corp.*, No. 15-CV-00164-HSG, 2016 WL 520985, at *15 (N.D. Cal. Feb. 10, 2016) ("As an initial matter, the factual basis for fraudulent concealment must differ from any cause of action for fraud that is pled.").

Plaintiffs argue that the statute of limitations was tolled by GM's alleged fraudulent concealment until no earlier than December 28, 2016.  Doc. 1-1 ¶ 122.  Plaintiffs allege that the December 28, 2016 visit to the mechanic was the first time that they "could have [] discovered that GENERAL MOTORS had misrepresented the characteristics of the 2011 GMC Sierra 1500 and concealed the known defects during the ownership of the subject vehicle." *Id.*  Plaintiffs allege GM "wrongfully concealed the fact (1) that the Vehicle was equipped with [an] engine that suffered from defects and/or latent defects, and (2) that its dealerships were making inadequate repairs that were incapable of addressing the root cause of the Vehicle's malfunctions." *Id.* ¶ 123.  Plaintiffs claim they reasonably relied on GM and its service dealership agent's allegedly false assurances that they had and would repair any problems with the engine in the Sierra. *Id.* ¶ 122.  And Plaintiffs allege the operative facts that are the basis of the claims

were concealed in confidential and privileged documents. *Id.* ¶ 124. GM counters that Plaintiffs' allegations are too vague and conclusory to show Plaintiffs could not have made the discovery earlier.

Plaintiffs failed to plead with sufficiently particularity a basis for application of fraudulent concealment. First, Plaintiffs do not plead with particularly when the fraud was discovered. Plaintiffs allege that the December 28, 2016 repair was "the date when Plaintiffs could have first discovered" GM's alleged misrepresentations and concealment. But Plaintiffs do not allege that December 28, 2016 was in fact when they discovered the alleged misrepresentations and concealment. Plaintiffs provide no detail on when they actually discovered GM's alleged misrepresentations and concealment regarding the specific oil consumption defect. *Almont Ambulatory Surgery Ctr.*, *LLC v. UnitedHealth Grp., Inc.*, No. CV 14-3053-MWF(VBKX), 2015 WL 12777091, at *12 (C.D. Cal. Feb. 12, 2015) ("United has failed to allege when the purported fraud was discovered. As such, in the same way that United has not satisfied the discovery rule for delayed accrual, it cannot avail itself of fraudulent concealment to toll the statute of limitation.").

Second, Plaintiffs fail to plead sufficiently the circumstances surrounding their discovery of GM's alleged misrepresentations and concealment of the oil consumption defect. Plaintiffs appear to argue that the discovery of the oil consumption defect simultaneously caused them to realize GM's alleged misrepresentations and concealment. At threshold, as described above, Plaintiffs fail to plead sufficiently the timing and manner of the discovery of the oil consumption defect itself, and do not provide sufficient facts describing how the December 28, 2016 repair put them on notice of a defect related to oil consumption in the Sierra. And, again, while Plaintiffs plead that December 28, 2016 is the earliest they "could have" discovered GM's fraudulent concealment, they do not plead they in fact discovered the alleged fraudulent concealment and misrepresentations on that date. Moreover, Plaintiffs do not plead with any particularity who or what provided them the basis to believe GM fraudulently concealed the oil consumption defect, when they learned of any such information, how it was communicated, and what information they received. Plaintiffs claim GM concealed the defect through

misrepresentations in advertisements for GM vehicles of different models and years, but do not specify which advertisements they actually viewed or relied upon. The only affirmative statements allegedly communicated to Plaintiffs were the reassurances given after the Sierra's earlier repairs, but, again, Plaintiffs do not plead the circumstances of these reassurances with sufficient particularity.

Finally, Plaintiffs did not sufficiently plead that they were not at fault for their failure to discover the defect, or had no actual or presumptive knowledge of facts sufficient to put them on inquiry. Again, Plaintiffs failed to plead sufficiently their discovery of the defect and Plaintiffs did not sufficiently plead that they were not on inquiry notice due to the three prior complaints for low power which were all repaired in the same manner unsuccessfully. For the same reasons as described above in relation to the discovery rule, Plaintiffs do not provide enough facts to show why *this* repair —the December 28, 2016 repair—is what provided the notice of GM's alleged fraudulent concealment and misrepresentations regarding the oil consumption defect, as opposed to the previous three repairs. Therefore, Plaintiffs failed to plead a basis for application of fraudulent concealment tolling of the statute of limitations.

### 3. *American Pipe* Class Action Tolling

Plaintiffs' third alleged basis for tolling the statute of limitations is the *American Pipe* class action tolling. In *American Pipe & Construction Co. v. Utah*, the U.S. Supreme Court held that a class action lawsuit can toll the statute of limitations on a later-filed individual complaint. 414 U.S. 538, 552-556 (1974). Plaintiffs argue that the statute of limitations was tolled by the filing of *Sloan et al. v. General Motors LLC*, Case No. 16-cv-07244-EMC (N.D. Cal.), on December 19, 2016. Doc. 1-1 ¶¶ 127-135. Plaintiffs allege that they were putative class members in *Sloan*, but did not have any notice of the class action. *Id.* ¶ 128. Plaintiffs assert *Sloan* involved substantially similar, if not identical, facts as this case, and involve allegations based on the same subject matter and similar evidence. *Id.* ¶¶ 130-32. The Court need not decide whether *American Pipe* tolling applies in this case. "Tolling can only suspend the running of a statute that still has time to run; it cannot revive a statute which has already run out." *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 651–52 (2003) (quoting *Forman v.*

*Chicago Title Ins. Co.* 32 Cal. App. 4th 998, 1006 (1995)); *see also Yi*, 2018 WL 3359016, at *7 ("In order for the statute of limitations to be tolled, however, it must not have run before the class action was filed."). Even if Plaintiffs were correct, and *Sloan* tolled their statute of limitations, this tolling did not begin until *Sloan* was filed on December 19, 2016. However, barring application of a tolling exception, the statute of limitations in this case expired on March 29, 2014. Plaintiffs' *American Pipe* tolling would not have begun until over two years after the expiration of the statute of limitations. Plaintiffs rely on the discovery rule to toll the statute of limitations up until the filing of *Sloan*, but the discovery rule does not apply for the reasons discussed *supra*. Thus, *American Pipe* does not provide a basis to toll Plaintiffs' claims in this case.

### 4. Equitable Tolling

Finally, Plaintiffs allege that equity demands tolling the statute of limitations. A court may apply equitable doctrines that toll or extend the timely filing deadlines. *See Nat'l R.R. Passenger Co. v. Morgan*, 536 U.S. 101, 122 (2002). Equitable tolling under California law "'operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004) (quoting *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003)). Equitable tolling generally applies in "extraordinary circumstances beyond plaintiffs' control which made it impossible to file their claims on time." *Seattle Audubon Soc'y v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045–56 (9th Cir. 2011). Courts should apply the doctrine of equitable tolling "sparingly." *Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir. 1992).

"Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: '(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith.'" *Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999) (quoting *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988)). Equitable tolling is inappropriate, however,

"where the claimant failed to exercise due diligence in preserving [her] legal rights." *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990).

Plaintiffs' Opposition is not clear as to the basis for applying equitable tolling. Plaintiffs' Complaint alleges that the filing of the *Sloan* class action provides a basis for equitable tolling, separate and apart from *American Pipe* tolling. Doc.1-1 ¶¶ 136-45.

The Court finds Plaintiffs did not plead a sufficient basis for the application of equitable tolling. First, to base equitable tolling on a prior lawsuit, "[t]he timely notice requirement essentially means that the first claim must have been filed within the statutory period." *Downs v. Dep't of Water & Power*, 58 Cal. App. 4th 1093, 1100 1997) (quoting (*Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 922-923 (1983)). Plaintiffs' equitable tolling allegations based on *Sloan* fail for the same reason as their argument for *American Pipe* tolling: *Sloan* was not commenced until December 19, 2016, nearly two years after the statute of limitations for Plaintiffs' claims expired. Plaintiffs' Complaint recognizes that equitable tolling under *Sloan* began on December 19, 2016. Doc. 1-1 ¶ 145. Equitable tolling based on *Sloan* thus would not save Plaintiffs' claims from the statute of limitations.

Second, Plaintiffs failed to plead their reasonable and good faith conduct. Plaintiffs allege that they brought the Sierra in for service three separate times for the same complaints and received the same unsuccessful repair each time. As described in relation to the discovery rule, Plaintiffs failed to allege why these prior repairs did not put them on notice of their claims, and failed to plead sufficiently why the December 28, 2016 repair was the first time they could have had notice of the oil consumption defect. Plaintiffs' bare allegation that "[s]hortly after discovering [GM's] fraudulent behavior, Plaintiffs filed the instant action to pursue their individual rights without delay," Doc. 1-1 ¶ 143, fails to plead sufficiently Plaintiffs' good faith and reasonable conduct, particularly considering Plaintiffs' failure to plead why they were not on inquiry notice of their claims earlier. *See Torres*, 2018 WL 2088268, at *3 n.2.

**B.    Economic Loss Rule**

GM argues Plaintiffs' claims for fraudulent inducement must be dismissed for violating the economic loss rule.  In California, "[t]he economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  "Economic loss consists of 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property . . . ." *Id.* at 988 (quoting *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482 (2002)) (internal quotations and citations omitted).  "A breach of contract is tortious only when some independent duty arising from tort law is violated." *Erlich v. Menezes*, 21 Cal. 4th 543, 554 (1999).

An exception to the economic loss rule, in which tort recovery will be permitted, is "where the contract was fraudulently induced." *Robinson*, 34 Cal. 4th at 989–90 (quoting *Erlich*, 21 Cal. 4th at 551–52); *Harris v. Atlantic Richfield Co.*, 14 Cal. App. 4th 70, 78 (1993) ("when one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort".) (citations omitted); *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996) ("it has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for the fraud." (citations omitted)); *United Guar. Mortgage Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) ("The economic loss rule poses no barrier to a *properly pled* fraudulent inducement claim....") (emphasis added); *Waitt v. Internet Brands, Inc.*, No. CV103006GHKJCGX, 2011 WL 13214104, at *2 (C.D. Cal. Jan. 6, 2011) (properly pleaded fraudulent inducement claim not barred by economic loss doctrine).

Therefore, the threshold determination is whether Plaintiffs have properly pleaded claims for fraudulent inducement.  As described below, Plaintiffs failed to plead properly their fraudulent inducement claims, and thus the Court need not decide at this early juncture whether they also would be barred by the economic loss doctrine.

**C.     Failure To State a Claim**

Under California law, the elements of fraud are: "(1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Lazar*, 12 Cal. 4th at 638.  Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud[.]" Fed. R. Civ. P. 9(b).  The party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct.  *Vess*, 317 F.3d at 1106 (citation omitted).

Plaintiffs' Complaint articulates theories of fraudulent inducement by omission and concealment, as well as by intentional and negligent misrepresentations.  As described below, Plaintiffs fail to plead with sufficient particularity several elements of each of their fraudulent inducement claims.  Therefore, the Court finds that these claims must be dismissed without prejudice.

**1.     Fraudulent Inducement – Intentional Misrepresentation**

**a.     False Representation**

Plaintiffs allege that GM made false representations to them through its marketing materials and its authorized agents.  Doc. 1-1¶¶ 97-106, 202.  Plaintiffs argue that they learned through marketing materials, sales brochures, and representations at the time of sale that the 2011 GM Sierra 1500 vehicles with at Vortec 5300 engine had superior attributes.  Plaintiffs plead that GM "extensively advertised" the benefits of the Vortec 5300 engine, "repeatedly told consumers" that the Vortec 5300 engine was of high quality, and "touted the performance benefits" of the Vortec 5300 engine in "brochures and advertisements.  Doc. 1-1 ¶¶ 97-99.  Plaintiffs plead examples of advertising in brochures, on GM's website, and a video released by GM.  *Id.* ¶¶ 97-106.  Plaintiffs also allege misrepresentations in the brochure for the 2011 GMC Sierra 1500.  *Id.* ¶ 202.

Plaintiffs fail to plead with sufficient particularity any false representation by GM.  At threshold, even viewing the evidence in the light most favorable to Plaintiffs, many of the representations quoted by Plaintiffs are simply non-actionable "puffery."  "Generalized, vague, and unspecified assertions

constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1139 (C. D. Cal. 2005) (citing *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)); *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (finding the statement that the defendants "would deliver 'flexibility' in their 'cost-per-copy' contracts and that they would lower copying costs for consumers" to be non-actionable puffery); *Finney*, WL 2552266, at *8 (collecting examples of puffery). "To be actionable, a statement must be 'specific and measurable' and capable of being proven true or false." *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1135, 1145 (9th Cir. 1997)). Most of the alleged misrepresentations Plaintiffs point too are not "specific and measurable" and instead generalized and vague assertions. *See, e.g.*, Doc. 1-1 ¶¶ 100 ("The most powerful V8 engines in Silverado history" and the Vortec 5300 engine "offers V8 fuel efficiency that's unsurpassed in its class"), 101 ("Great Power Without Sacrifice" and "fuel economy its competitors can't beat,"), 104 ("Silverado – the most dependable, long-lasting, full size pickups on the road), 105 ("Chevrolet provides consumer with fuel-efficient, safe and reliable vehicles that deliver high quality, expressive design, spirited performance and value"), 106 ("quality processes in the plant that prevent any defects from getting out"), 202 ("The Vortec engine family has a well-earned reputation for durability, power and efficiency").

Furthermore, most of the brochure advertising, the GM website, and the video by GM do not relate to characteristics of the model and year of the vehicle at issue. *See* Doc. 1-1 ¶¶ 100 (brochure for 2013 Chevrolet Silverado), 101 (brochure for 2012 Chevrolet Tahoe), 102 (2010 Chevrolet Colorado), 103 (2012 GMC Sierra), 104 (2011 Chevrolet Silverado). Several of these brochures do not even say anything about the 5300 Vortec engine or relate to engine performance at all. *See id.* ¶¶ 101, 104. Most of the brochures are also undated. Similarly, the website advertisement and video do not relate to the vehicle model and year at issue, and do not mention anything about the 5300 Vortec engine. *Id.* ¶¶ 105-6. And none of these alleged representations mention anything about oil consumption. *See Sukonik v.*

*Wright Med. Tech., Inc.*, No. CV1408278BROMRWX, 2015 WL 10682986, at *15 (C.D. Cal. Jan. 26, 2015) (representation must be about the material fact at issue); *see also Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993) ("specific pleading is necessary to 'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom.) (quoting *Garcia v. Superior Court*, 50 Cal. 3d 728, 737 (1990)). Similarly, none of Plaintiffs' quoted statements from the brochure for the 2011 GMC Sierra 1500 makes any claim regarding oil consumption. *Id.* ¶ 202.

Most significantly, Plaintiffs do not plead which of these representations Plaintiffs relied upon in purchasing the Sierra. Plaintiffs only offer generic and non-specific statements such as "Plaintiffs justifiably and reasonably relied on Defendant's representations related to the reliability of the 2011 GMC Sierra 1500 and 5.3-L Vortec 5300 Engine." Doc. 1-1 ¶ 206; *see also id.* ¶ 215. Plaintiffs do not plead one way or the other whether they actually had seen any of the brochures, advertisements, website statements, or videos prior to purchasing the Sierra, how they obtained or accessed any of the materials, and when they viewed these materials. Moreover, Plaintiffs do not plead that they actually relied on any of the alleged representations in purchasing the Sierra. *See Sukonik*, 2015 WL 10682986, at *15 ("This allegation fails under Rule 9(b) [in part] because . . . Plaintiff also fails to specify when he was exposed to the representations.") (emphasis added); *see also Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *13 (N.D. Cal. June 1, 2018) (dismissing claims that failed to "allege[] any facts that plausibly suggest that had GM disclosed the Oil Consumption Defect they would have been aware of the disclosure. They have not pleaded that they reviewed any advertising materials before purchasing their Vehicles; nor have they alleged that they had specific interactions with GM before purchasing their Vehicles, as did the *Daniels* plaintiffs. They have not even alleged that they purchased their Vehicles from GM dealerships."). Indeed, Plaintiffs in general fail to plead with particularity any communications or interactions with GM. Plaintiffs cannot establish the misrepresentation element without showing what misrepresentations actually were made to Plaintiffs.

### b. Knowledge of Oil Consumption Defect at Time of Sale

Plaintiffs argue that they sufficiently pleaded the element of GM's knowledge of problems with the Sierra. Plaintiffs plead that GM had knowledge of problems with the purchase of the Sierra prior to sale. Doc. 1-1 ¶¶41-42, 47, 83-90, 204. Specifically, Plaintiffs allege GM learned of the oil consumption defect prior to the sale of Plaintiffs' Sierra through pre-release testing data, consumer complaints dating to as early as 2008 and continuing thereafter, testing conducted in response to those complaints, and aggregate data from dealers "including dealer repair orders and high warranty reimbursement rates." *Id.* ¶¶ 47, 84, 86. Plaintiffs allege that awareness is also shown through GM's redesign of the Vortec 5300 engine as early as May 2011. *Id.* ¶¶ 31, 83. Finally, Plaintiffs allege that GM issued several technical service bulletins ("TSBs") regarding issues with oil consumption, beginning in August 2010. *Id.* 1-1 ¶¶ 61, 65, 88.

Whether Plaintiffs sufficiently pleaded GM's knowledge of an oil consumption defect at the time of sale is a close call, but the Court finds at this early stage Plaintiffs pleaded with sufficient particularity GM's knowledge of a defect at time of sale. At threshold, given the Plaintiffs' failure to allege sufficiently a false representation made to them by GM, there is no representation to which knowledge of its falsity could attach. Nevertheless, the Court proceeds on the assumption that Plaintiffs can amend to allege a representation that the Sierra did not have the oil consumption defect.

Plaintiffs do not specify any details regarding the "pre-release testing" and testing in response to complaints, including what testing was conducted, by whom, where it was conducted, what the results were, and when the testing was conducted. Doc. 1-1 ¶ 47; *see also Hardt v. Chrysler Grp. LLC*, No. SACV1401375SJOVBKX, 2015 WL 12683963, at *4 (C.D. Cal. Mar. 16, 2015) ("In cases where the plaintiffs fail to allege how "pre-release testing data" or "aggregate data" could have alerted the manufacturer to the alleged defect, courts have treated generalized allegations regarding the existence of such testing or information as insufficient to establish knowledge."); *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 908–10 (E.D. Cal. 2018) (Plaintiffs could not establish knowledge of a defect

relying, in part, on allegations that defendant "conducted a significant amount of after-market testing, [because] the complaint lacks any specific details about what type of after-market testing was performed and whether this unidentified testing was performed prior to Plaintiffs' purchase of Electrolux's oven in June 2015."); *Resnick v. Hyundai Motor Am., Inc.*, No. CV1600593BROPJWX, 2016 WL 9455016, at *13 (C.D. Cal. Nov. 14, 2016) (allegations of knowledge of a defect from testing defective in part because "they fail to establish *when* any such testing occurred") (emphasis in original).

Similarly, regarding the alleged consumer complaints, Plaintiffs only state that consumer complaints were made as early as 2008 regarding "engine stalling, excessive oil consumption, and loss of power," and that GM's policy in response was to tell the customer to bring the vehicle in for an oil check. Doc. 1-1 ¶¶ 33, 47, 84, 87-88, 92-93. Plaintiffs do not state who made the complaints, what vehicles were involved in the complaints, how the complaints were made (other than a single reference that some were "online"), to whom the complaints were made, how many complaints were made, and what specific dates the complaints were made on. *Id.*; *see also MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1094–95 (N.D. Cal. 2014) ("undated complaints cannot support an inference of knowledge because the[y] 'provide no indication whether the manufacturer was aware of the defect *at the time of sale.*'") (emphasis in original) (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012)). And the allegations of testing in response to the complaints do not specify what testing was conducted, by whom, where it was conducted, what the results were, and when the testing was conducted. The allegations of pre-release testing, consumer complaints, testing conducted in response to complaints, and aggregate dealership data would not on their own establish GM's knowledge of a defect prior to sale.

Nevertheless, Plaintiffs do provide two allegations, taken as true for purposes of this motion, that would establish GM's knowledge of defect at the time of sale. First, Plaintiffs' allegation that GM began redesigning the Vortec 5300 engines as early as May 2011 supports a reasonable inference that GM was aware of some problem with the engine design at the time of sale in 2010. *See Falco v. Nissan*

*N. Am. Inc.*, No. CV 13-00686 DDP MANX, 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013)

(redesign of allegedly defective part one to two years after sale, in conjunction with other facts,

permitted plausible inference of knowledge of a defect at time of sale).  Second, the fact that GM

allegedly issued TSBs beginning in August 2010 directly related to the oil consumption issue, proposed

fixes for Plaintiffs' claimed causes of the oil consumption issue (the PCV and AFM systems), and stated

this was not a permanent fix also supports a reasonable inference that at time of sale GM was aware of a

defect related to oil consumption in the Vortec 5300 engine.  *See MacDonald*, 37 F. Supp. 3d at 1093

("One plausible inference that can be drawn from the three TSBs is that Ford was generally aware of

problems with the coolant pump, and that despite this awareness it continued to sell vehicles containing

the defective part."); *Bryde v. Gen. Motors, LLC*, No. 16-CV-02421-WHO, 2016 WL 6804584, at *10

(N.D. Cal. Nov. 17, 2016) ("One plausible inference that can be drawn from the TSBs is that GM "was

generally aware of problems" with the airbag sensors and lights, and "that despite this awareness it

continued to sell vehicles containing the defective part.""); *Hindsman*, 2018 WL 2463113, at *12 (N.D.

Cal. June 1, 2018) ("The 2015 TSB plausibly supports an inference that GM knew of the Oil

Consumption Defect prior to Mr. Andrews' purchase of his used Vehicle in 2017 and Ms. Miranda's

purchase of her used Vehicle in January 2015."); *Hardt*, 2015 WL 12683963, at *5 ("One plausible

inference that can be drawn from the TSB is that Chrysler knew of the problems affecting the Class

Vehicles equipped with the Manual Transmission because the Dodge Journeys featuring the same

Manual Transmission experienced the same or very similar problems affecting the clutch pedal.").

These two allegations, taken together and as true, would give rise to a reasonable inference that GM

knew of a defect related to oil consumption at the time of sale.  *See Deras v. Volkswagen Grp. of Am.,

Inc.*, 2018 WL 2267448, at *5 (N.D. Cal. May 17, 2018) ("Courts 'are divided' as to whether it is

sufficient to allege that a defendant 'had exclusive access to additional sources of information that reveal

the [alleged] defect, including pre-production testing, pre-release testing data, early consumer

complaints made exclusively to [the defendant], . . . testing conducted in response to complaints, . . . and

aggregate data from [defendant's] dealers.' . . . [T]he dispositive issue '[is] whether the plaintiffs provided additional information supporting their allegations. . . . .'") (internal citation omitted) (quoting *MacDonald*, 37 F. Supp. 3d at 1095-96). Therefore, accepted as true for purposes of this motion, the Court finds Plaintiffs pleaded facts giving rise to a reasonable inference of GM's knowledge of a defect in the Sierra at the time of sale.

### c. **Intent To Defraud**

Plaintiffs contend that they sufficiently pleaded GM's intent to defraud. Plaintiffs allege that: "Defendants intended that Plaintiffs rely on the foregoing representations related to the Subject Vehicle and the 5.3-L Vortec 5300 engine, including that neither had inherent and irreparable defects, and that the Subject Vehicle had superior towing capacities in inducing Plaintiffs to purchase the vehicle." Doc. 1-1 ¶ 205. A plaintiff may plead intent generally. Fed. R. Civ. P. 9(b). "But allegations of intent must still meet Rule 8(a)'s plausibility standard under *Twombly* and *Iqbal* and "threadbare recitation of the prima facie elements of a fraudulent inducement claim falls short of Rule 8(a)." *Sukonik*, 2015 WL 10682986, at *15 ("Plaintiff has not pleaded *facts* demonstrating WMT's intent to defraud . . . . Most manufacturers, if not all, make representations about their products to induce sales. Because Plaintiff has not set forth the circumstances constituting WMT's alleged fraud, the Court cannot reasonably conclude that WMT published and distributed the marketing and promotional materials *with the intent to defraud.*"); *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) ("[F]raudulent intent cannot be proven, however, by simply pointing to the defendant's subsequent failure to perform as promised.") (citing *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30–31 (1985)); *Icasiano v. Allstate Ins. Co.*, 103 F. Supp. 2d 1187, 1191–92 (N.D. Cal. 2000) ("Plaintiff's nebulous, retrospective allegation that Allstate never had any intention of performing its contractual obligations is insufficient under federal law."); *Hsu v. OZ Optims*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) ("Plaintiffs' complaint simply states that "defendant OZ had no intention to be bound by the terms as agreed in the aforesaid

agreements." [] Plaintiffs have failed to plead fraud with specificity as required by Rule 9(b) . . . .")
(citation omitted).

Plaintiffs failed to plead sufficiently GM's intent to defraud. As described above, Plaintiffs failed to plead the element of misrepresentation. Plaintiffs generally fail to allege which representations they relied upon, who made the representations they relied upon, the content of the representations they relied upon, and when the representations they relied upon were made. With regards to Plaintiffs pleading of GM's intent in the Complaint specifically, it is again unclear which representations were actually made to these Plaintiffs at the time of contract formation, and therefore which would elucidate GM's intent. The alleged representations cited by Plaintiffs in paragraph 205 of the Complaint—that the Sierra and Vortec 5300 Engine had no "inherent and irreparable defects and that the Subject Vehicle had superior towing capacities"—are vague and conclusory, and not supported with sufficient factual bases, including if these are the same representations described elsewhere in the Complaint, when these representations were made, how they were made, how they induced Plaintiffs to purchase the Sierra, and how they relate to the oil consumption defect. *See* Doc. 1-1 ¶ 205. If there are insufficient allegations of any misrepresentation, then logically there is no misrepresentation to which GM's intent to defraud Plaintiffs can attach. Plaintiffs fail to plead facts that permit a reasonable influence that GM made specific representations with an intent to defraud.

### d.  <u>Justifiable Reliance</u>

Plaintiffs allege that they justifiably and reasonably relied on GM's representations and would not have purchased the Sierra had they known about the oil consumption defect. Doc. 1-1 ¶¶ 206-207. "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or non-disclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." *City Solutions, Inc. v. Clear Channel Commc'ns.*, 365 F.3d 835, 840 (9th Cir. 2004) (quoting *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995)) (citation omitted). While

reliance upon the truth of the fraudulent misrepresentation does not need to be the "sole or even the predominant or decisive factor in influence his conduct," it must at least be a "substantial factor" in influencing the decision. *Id.* (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951, 976–77 (1997)).

Plaintiffs failed to plead the justifiable reliance element for similar reasons as the misrepresentation element: Plaintiffs simply do not plead with any particularity which representations from GM they actually encountered before purchasing the Sierra. Without such allegations, there is no legally actionable representation to justifiably rely upon. *See Sukonik*, 2015 WL 10682986, at *15 ("Because Plaintiff has not set forth any facts demonstrating that he or his physician actually saw or read the marketing materials, discussed them together, and accordingly relied on them in choosing the Profemur hip implant, the Court cannot reasonably conclude that the materials "played a substantial part" in the decision to use a Profemur hip device."); *id.* at *17 ("Plaintiff must plead facts demonstrating that he was actually exposed to the 'incomplete and inaccurate' promotional materials and found them to be material in selecting the Profemur device."). Moreover, without a clear representation alleged, it cannot be determined whether Plaintiffs' reliance was reasonable or justified.

### e. <u>Resulting Damage</u>

The final element of fraudulent inducement by intentional misrepresentation is resulting damages. "Deception without resulting loss [or injury] is not actionable fraud." *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 870 (2007), *as modified* (Dec. 26, 2007). Plaintiffs argue they pleaded that "they suffered an ascertainable loss of money, property, and value to the Subject Vehicle as a result of General Motors' concealment. [citation omitted]. Plaintiffs were damaged . . . because Plaintiffs entered into a sale of a vehicle that Plaintiffs would not have otherwise purchased." Doc. 5 at 14. The paragraphs of the Complaint cited by Plaintiffs for the proposition that they pleaded an "ascertainable loss of money, property, and value" does not include any statement or facts related to this "ascertainable loss." Doc. 1-1 ¶¶ 196-97. Other

paragraphs offer boilerplate statements that the Plaintiffs suffered "ascertainable loss," or provide hypothetical, unquantified costs. *See id.* ¶¶ 38, 40, 44-45. However, Plaintiffs did plead that "they have not received the benefit for which they bargained" and "[a]s a result of the Oil Consumption Defect, the [Sierra] as diminished in value, including resale value." *Id.* ¶¶ 35, 111-12. Plaintiffs also plead that they were "harmed by purchasing a vehicle that Plaintiffs would not have purchased" had they known about the oil consumption defect. *Id.* ¶ 207.

There is clear authority that alleging damage in the diminished value of a vehicle or the failure to receive the benefit of the bargain, in conjunction pleading more specific damages such as costs of repair, is sufficient to survive a motion to dismiss. *See Bryde*, 2016 WL 6804584, at *12 (injury sufficiently pleaded where plaintiffs provided specific costs from diagnosing and repairing the defect, plaintiffs alleged they would not have purchased the vehicle or paid less for it had they known of the defect, and plaintiffs' vehicle suffered a loss of value); *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013) ("Plaintiffs pled facts showing adequate grounds for damages based on costs of repair and being exposed to the risk of automobile accidents and moving violations."); *see also Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1331 (C.D. Cal. 2013) ("Plaintiffs plead, however, that they suffered concrete financial injuries in the form of repair costs, money paid for diagnostic tests, and out-of-pocket expenses for frequent additions of oil. Since plaintiffs allegedly incurred concrete financial losses in the form of ascertainable out-of-pocket damages, the court concludes that they have demonstrated injury-in-fact . . . .").

It is less certain whether it is sufficient to allege only the diminished value of the vehicle and loss of the benefit of the bargain, without a more particularized pleading of costs, though courts have found it sufficient. *See Benkle v. Ford Motor Co.*, No. SACV161569DOCJCGX, 2017 WL 9486154, at *8 (C.D. Cal. Dec. 22, 2017) ("the Plaintiffs allege that they would not have purchased Defendant's product, or would have paid much less, if Defendant had not concealed a known defect. [Citation Omitted.] Therefore, they have pled facts which substantiate the injury element of their fraud claims.").

Nevertheless, taking all of Plaintiffs' allegations as true for purposes of this motion, the Court finds Plaintiffs sufficiently pleaded there were resulting damages in alleging that the Sierra has suffered diminished value, including resale value, as well as that Plaintiffs made a purchase they would not have done so otherwise.

### 2.     <u>Fraudulent Inducement –Negligent Misrepresentation</u>

"The elements of negligent misrepresentation are similar to intentional fraud except for the requirement of scienter; in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an *intentionally* false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006). Thus, as to elements shared by negligent and intentional misrepresentation claims, Plaintiff's claim for negligent misrepresentation fails for the same reasons as described in relation to intentional misrepresentation, *supra*. Plaintiffs likewise fail to plead with sufficient particularity that GM made a claim which it lacked any reasonable ground for believing to be true. It is again unclear what representations Plaintiffs actually reviewed and relied upon in purchasing the Sierra, much less when the representations were made, what their content was, how they were made, who made the representations, and why they were false. And Plaintiffs only offer boilerplate language such as GM "had no reasonable grounds for believing the representations were true" and GM "as negligent in making these representations." *See* Doc. 1-1 ¶¶ 210, 214. Plaintiffs plead no underlying facts to support these statements. Therefore, the Court must dismiss Plaintiffs' negligent misrepresentation claim.

### 3.     <u>Fraudulent Inducement – Concealment</u>

"Fraudulent concealment is a type of fraud or deceit that requires proof of the same elements." *Stewart*, 304 F. Supp. 3d at 905 (citing *Lovejoy v. AT & T Corp.*, 119 Cal. App. 4th 151, 158 (2004)). The elements for fraudulent concealment have been formulated alternatively as:

> (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact;

(4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.

*Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014). For the reasons described below, Plaintiffs also failed to plead with sufficient particularity their fraudulent inducement by concealment claim.

### a.      Concealment or Suppression of a Material Fact

"Not every omission or nondisclosure of fact is actionable. *Gutierrez v. Carmax Auto Superstores California*, 19 Cal. App. 5th 1234, 1258 (2018), *as modified on denial of reh'g* (Feb. 22, 2018). "[A]n omission is actionable . . . if the omitted fact is (1) "contrary to a [material] representation actually made by the defendant" or (2) is "a fact the defendant was obliged to disclose." *Id.* (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006), as modified (Nov. 8, 2006)); *see also Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (same). "In order for non-disclosed information to be material, a plaintiff must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (quoting *Mirkin*, 5 Cal.4th at 1093).

"Alleging fraudulent omission or concealment is somewhat different from pleading an affirmative misrepresentation in that a plaintiff cannot generally plead either the specific time of an omission or the place it occurred." *Stewart*, 304 F. Supp. 3d at 906; *see also Falk*, 496 F.Supp.2d at 1098-99 ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim."). "Despite this distinction, claims sounding in fraud, even concealment or omission claims, still must be pled with particularity." *Stewart*, 304 F. Supp. 3d at 906 (citing *Kearns*, 567 F.3d at 1127 ("the contention that . . . nondisclosure claims need not be pleaded with particularity is unavailing.")). "[T]o plead the circumstances of omission with specificity, [a] plaintiff must describe the content of the

omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Eisen v. Porsche Cars N.A., Inc.*, No. 11–cv–9405 CAS (FEMx), 2012 WL 841019, at * 3 (C.D. Cal. Feb. 22, 2012).

Plaintiffs pleaded with sufficient detail that the omission of the oil consumption defect is "material." Plaintiffs plead that the oil consumption defect can cause "engine misfires and shutdown events" while the vehicle is in operation, with no notice, creating a risk of accidents and injury. Doc. 1-1 ¶¶ 26, 29, 34, 37, 77-82. Plaintiffs pleaded that had they known of the oil consumption defect, they would not have purchased the Sierra or would have paid substantially less for it. *Id.* ¶ 42. "A reasonable consumer would consider this risk material because of the inherent risks of physical injury" if the engine unexpectedly stalls or completely fails during operation. *See Mui Ho*, 931 F. Supp. 2d at 997. And, as described below, Plaintiffs pleaded sufficiently that GM had a duty to disclose the alleged oil consumption defect, and thus was "obligated" to do so. Nevertheless, Plaintiffs failed to sufficiently plead every piece of the element of concealment or suppression of a material fact.

First, Plaintiffs do not plead GM's omission with sufficient particularity. Plaintiffs do not offer facts describing "where the omitted information should or could have been revealed" nor do Plaintiffs "provide representative samples of advertisements, offers, or other representations *that plaintiff relied on to make her purchase* and that failed to include the allegedly omitted information." *Eisen*, 2012 WL 841019, at * 3 (emphasis added); *see also Parenteau v. Gen. Motors, LLC*, 2015 WL 1020499, at *7 (C.D. Cal. Mar. 5, 2015) (plaintiff failed to plead sufficiently an omission where she did "not allege any contact with Defendant (as distinct from the dealer) prior to purchasing her vehicle where omissions regarding the defect at issue should or could have been revealed. Nor does she allege with any degree of specificity which advertisements, offers, or other representations she relied on that failed to include the omitted information."). Without any underlying omission, Plaintiffs cannot sufficiently plead that GM was obligated to disclose a fact but chose to omit it.

Second, Plaintiffs fail to plead with particularity that GM actively concealed the oil consumption defect. Again, Plaintiffs failed to plead with sufficient detail what representation Plaintiffs relied upon in purchasing the Sierra. Therefore, the concealed fact – the oil consumption defect – is not "contrary to a [material] representation actually made by the defendant." *Gutierrez*, 19 Cal. App. 5th at 1258; *Daugherty*, 144 Cal. App. 4th at 834 (holding plaintiff failed to plead a fraudulent omission where "no representation was made to which the alleged concealment was contrary."). Moreover, "[a]n allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of concealment; e.g., that the defendant sought to suppress information in the public domain or obscure the consumers' ability to discover it." *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, *7 (N.D. Cal. 2013) (internal quotation marks omitted); *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, *10 (C.D. Cal. 2012) ("[I]f mere nondisclosure constituted 'active concealment,' the duty requirement would be subsumed and any material omission would be actionable."); *Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN RBB, 2014 WL 1664235, at *6 (S.D. Cal. Apr. 18, 2014) ("If this court could infer affirmative acts from mere knowledge and inaction, then active concealment would be reduced to a weakened form of exclusive knowledge."). Plaintiffs offer conclusory language suggesting GM "knew of and concealed the existence" of the oil consumption defect, and do not provide sufficient detail of GM's affirmative acts to suppress or obscure the oil consumption defect. *See, e.g.*, Doc. 1-1 ¶¶ 42, 97, 190. Similarly, Plaintiff pleads language such as GM "attempted to suppress public recognition of the [defect] by propagating the falsehood that the excessive oil consumption . . . was normal," but offers no specific facts regarding either the suppression itself, or the details of the alleged propagation of the falsehood. *Id.* ¶ 94. "Mere nondisclosure" is not the same as active concealment. *Gray*, 2012 WL 313703, *10. The closest Plaintiffs come to pleading concealment is in stating "Plaintiff [] did not know of the irreparable nature of the [defect] at the time of any of the repair attempts because [GM] and its agents repeatedly represented that it was able to fix the vehicle upon return of the Vehicle to Plaintiff." Doc. 1-1 ¶ 194. However, Plaintiffs fail to plead concealment via these reassurances with sufficient

particularity, by failing to include facts regarding the dates of the repairs, where the vehicle was taken for repair, specifics of the "loss of power issues," who represented to Plaintiffs that it was able to fix the vehicle, the content of these representations, the intent of the individual(s) to deceive Plaintiffs in making these representations, and why Plaintiffs did not question whether the vehicle truly was fixed after multiple repairs for the same problem. Thus, Plaintiffs failed to plead with sufficient particularity the element of concealment or suppression of a material fact.

### b. <u>Duty To Disclose</u>

The second required element of fraudulent inducement by concealment is a duty to disclose. Plaintiffs argue GM had a duty to disclose the existence of the oil consumption defect. A duty to disclose arises in four circumstances:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

*LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997). A line of cases has held that "a fact can give rise to a duty to disclose and an actionable omission if it implicates safety concerns that a reasonable consumer would find material." *Mui Ho*, 931 F. Supp. 2d at 996-97; *see also Wilson*, 668 F.3d at 1141 ("A manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.") (quoting *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009)); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010), *aff'd*, 462 F. App'x 660 (9th Cir. 2011). However, California Court of Appeal recently rejected these cases to the extent they held that there is an independent duty to disclose safety concerns. *See Gutierrez*, 19 Cal. App. 5th at 1259-60. The *Gutierrez* court held that a duty to disclose safety concerns does not exist

outside the four situations listed above from *LiMandri*, and the duty to disclose safety concerns is just a specific application of one of the four situations above. *Id.*[2]

The first circumstance in which a duty to disclose may arise is if the defendant is in a fiduciary relationship with a plaintiff. Here, while there is some dispute whether a dealership is the agent of an automotive manufacturer, ultimately Plaintiffs do not plead a fiduciary duty owed to them by GM.

The second two circumstances that give rise to a duty are active concealment of a defect and making partial representations while also suppressing material facts. As described above, Plaintiffs failed to plead a factual basis for either duty. Plaintiffs failed to plead with sufficient particularity "affirmative acts of concealment[,] *e.g.*, that the defendant sought to suppress information in the public domain or obscure the consumers' ability to discover it." *Taragan*, 2013 WL 3157918, *7 (internal quotation marks omitted). And Plaintiffs failed to plead with sufficient particularity what representations GM made to them, that Plaintiffs actually relied upon in purchasing the vehicle. For the same reasons, Plaintiffs failed to sufficiently plead that any partial representations were made by GM, and thus there was no duty to disclose based on partial representations.

Finally, Plaintiffs argue that GM's exclusive knowledge of the oil consumption defect created a duty to disclose. "Generally, courts have not defined 'exclusive' literally, but have found such claims cognizable if the defendant had 'superior' knowledge of a defect that was not readily apparent and there

---

[2] The Ninth Circuit recently stated that although "the recent California cases do cast doubt on whether *Wilson*'s safety-hazard requirement applies in all circumstances, we have no occasion in this case to consider whether the later state-court cases have effectively overruled *Wilson*." *Hodsdon*, 891 F.3d at 861–62 (9th Cir. 2018). Regardless, the Ninth Circuit has held that its interpretations of California state law are "only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect." *In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002) (overruling prior holding inconsistent with two intervening cases from the California Court of Appeal) (internal citation omitted); *see also Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013) (though decisions of the Court of Appeal are persuasive but not binding, "[w]e should nevertheless follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it."); *Briceno v. Scribner*, 555 F.3d 1069, 1080 (9th Cir. 2009) ("In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently."); *Hernandez v. Towne Park, Ltd.*, No. CV 12-02972 MMM JCGX, 2012 WL 2373372, at *13 n.62 (C.D. Cal. June 22, 2012) ("The Ninth Circuit has strongly stated that when applying California law, federal district courts should follow precedential decisions by the California Court of Appeal.") (citing *Watts*). Accordingly, the Court declines to follow cases suggesting a safety-based duty under California state law to the extent they contradict *Gutierrez*. And, regardless of whether a safety-based duty does exist, the Court finds GM did have a duty to disclose the alleged defect at the time of sale.

is no or only . . . limited publicly available information about the defect." *Salas v. Toyota Motor Sales,*

*U.S.A., Inc.*, No. CV 15-8629 FMO (EX), 2016 WL 7486600, at *10 (C.D. Cal. Sept. 27, 2016) (quoting

*Daniel v. Ford Motor Co.*, 2016 WL 2899026, at *4 (E.D. Cal. 2016)).  As described above, Plaintiffs

have pleaded with sufficient particularity facts giving rise to a reasonable inference that GM knew of a

potential oil consumption defect at the time of sale.  Indeed, as the manufacturer of the Sierra, GM was

plainly in the superior position to know about oil consumption issues, including any internal testing.

The issuance of the TSBs and redesign of the Vortec 5300 engine suggest a gathering of data and

information regarding the oil consumption defect, and establishes GM's superior knowledge of a defect

that would not readily be apparent to consumers.  *See Falk*, 496 F. Supp. 2d 1088, 1096-97 (N.D. Cal.

2007) (finding exclusive knowledge requirement satisfied where General Motors was allegedly aware of

defect based on "pre-release testing data" and "numerous complaints from its customers").  This

information was not readily available to Plaintiffs or other consumers.  Therefore, when accepted as true

for the purposes of this Rule 12(b)(6) motion, Plaintiffs allege sufficiently at least one plausible basis for

a duty to disclose the alleged oil consumption defect.

### c.    Intent To Defraud by Intentional Concealment or Suppression

Plaintiffs did not plead with sufficient particularity GM's intent to defraud, nor did they plead

with sufficient particularity GM's intentional concealing or suppressing of a material fact.  As described

above, Plaintiffs failed to plead with sufficient particularity the element of concealment or suppression

of a material fact.  Without the concealment or suppression, there is no act to which intention may

attach.  Moreover, Plaintiffs failed to plead facts elucidating GM's intent to defraud Plaintiffs through

concealment or suppression of a material fact.  Plaintiffs only offer boilerplate language such as GM

"intentionally concealed and failed to disclose" the defect, GM "actively concealed information," and

GM "intended to deceive Plaintiff by concealing the known issues."  Doc. 1-1 ¶¶ 188, 189, 192.  Thus,

Plaintiffs did not sufficiently plead a factual basis for GM's intentional concealment or suppression,

much less that it was done with an intent to defraud.

**d.** **Plaintiffs Unaware and Would Not Have Acted as They Had if They Had Known of the Concealed or Suppressed Fact**

Plaintiffs pleaded with sufficient particularity that they were unaware of the alleged oil consumption defect and would not have purchased the Sierra had they known of the alleged defect. *See* Doc. 1-1 ¶ 42.

**e.** **Sustained Damage as a Result of the Concealment/Suppression**

For the same reasons described regarding the "resulting damages" element of fraudulent inducement by intentional misrepresentation, the Court finds Plaintiffs have pleaded sufficiently that they sustained damage from the alleged concealment/suppression of facts regarding the oil consumption defect.

## VI. CONCLUSION AND ORDER

For the reasons stated above, GM's motion to dismiss the following claims is GRANTED with leave to amend as to Counts IV, V, and VI only. Plaintiffs shall have twenty (20) days from electronic service of this Order to file an amended complaint. Plaintiffs should count on this being the last time they can amend. This Court has spent a great deal of resource in preparing this Order. Should it be ignored, it will not be overlooked on any decision concerning dismissal.

IT IS SO ORDERED.

Dated:   **December 10, 2018**          **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES CHIEF DISTRICT JUDGE