# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ANTHONY GARCIA and AMY ELLEN GARCIA, individuals;<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC; a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>Defendants. | 1:18-cv-01313-LJO-BAM<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>(ECF No. 12) |

## I. INTRODUCTION

Plaintiffs Mark Anthony Garcia and Amy Ellen Garcia bring this action against Defendants General Motors, LLC ("GM"), and Does 1-10. This action arises out of Plaintiffs' purchase of a 2011 GMC Sierra 1500. Plaintiffs allege causes of action for violation of the Song-Beverly Consumer Warranty Act and for fraudulent inducement. GM moves to dismiss Plaintiffs' First Amended Complaint's ("FAC") claims for fraudulent inducement for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, this Court **GRANTS** GM's motion to dismiss the FAC's fraudulent inducement claims.

## II. BACKGROUND

The Court adopts and incorporates by reference the factual and procedural background of its Order on GM's original motion to dismiss. *See* ECF No. 9. In short, Plaintiffs allege that they purchased from Defendants a new 2011 GMC Sierra 1500 (the "Sierra") that contained a Generation IV

1

5.3 Liter V8 Vortec 5300 engine ("Vortec 5300 engine") later discovered to suffer from an "oil consumption defect." The Court originally granted GM's motion to dismiss Plaintiffs' fraud causes of action, with leave to amend. ECF No. 9. Plaintiffs filed their FAC on December 28, 2018. ECF No. 11. Plaintiffs amended their complaint to add new factual allegations, including:

- An excerpt from a brochure for the vehicle at issue, a 2011 GMC Sierra. ECF No. 11 ¶¶ 105, 203.

- On or around July 27, 2012, Plaintiffs delivered the Sierra to an authorized GM repair facility, complaining that the "check engine" and "reduce[d] engine power" warning lights were illuminated. ECF No. 11 ¶ 114. The facility technicians performed diagnostic tests and found no issues, but replaced the accelerator pedal position sensor. *Id.* The vehicle was returned to Plaintiffs, and the service manager of the facility notified Plaintiffs the Sierra was operating normally and was safe to drive. *Id.*

- On or around June 26, 2013, Plaintiffs again delivered the Sierra to an authorized GM repair facility. ECF No. 11 ¶ 115. Plaintiffs again complained the "check engine" and "reduce[d] engine power" warning lights were illuminated. *Id.* The service technicians performed diagnostic tests and found insulation broken on the accelerator pedal position sensor. *Id.* The repair facility technicians replaced the pins and cleared the diagnostic codes. *Id.*

- The Sierra was returned to Plaintiffs, and the service manager of the authorized repair facility notified Plaintiffs that the Sierra was operating normally and was safe to drive. *Id.*

- On or around July 1, 2015, Plaintiffs again delivered the Sierra to an authorized GM repair facility for repair. *Id.* ¶ 116. Plaintiffs complained of an illuminated "check engine" light and reduced vehicle power. *Id.* The repair facility technicians diagnosed a failure of the accelerator pedal position sensor, inspected the connectors, and found no corrosion or damage. *Id.* The repair facility technicians removed and replaced the accelerator pedal position sensor. *Id.* The Sierra was returned to Plaintiffs, and the service manager of the authorized repair facility notified

- Plaintiffs that the Sierra was operating normally and was safe to drive. *Id.*
- On or around December 28, 2016—after the expiration of the Sierra's drivetrain warranty—Plaintiffs again delivered the Sierra to an authorized GM repair facility for repair. ECF No. 11 ¶ 117. Plaintiffs complained of an illuminated "check engine" light and reported that the Sierra had reduced power. *Id.* The repair facility technicians tested electrical circuits and inspected the wire harness. *Id.* The repair facility technicians found butt-connected wires and damaged insulation. *Id.* The repair facility technicians cut out damaged wire insulation and butt connectors, and crimped and soldered the connections. *Id.* The Sierra was returned to Plaintiffs, and the service manager of the authorized repair facility notified Plaintiffs that the Sierra was operating normally and was safe to drive. *Id.*
- As a result of this last visit, Plaintiffs began to investigate further the problems reported by other owners of 2011 GMC Sierra 1500s, and Plaintiffs learned of the problems associated with the Engine Oil Defect, including the problems with reduced power that Plaintiffs had been experiencing. *Id.* At this time, Plaintiffs began to suspect that the problems they had experienced with the Subject Vehicle were caused by a defect known and concealed by GM. *Id.* Unlike the previous repair attempts, this was the first time service technicians suggested that the problems with reduced power extended beyond the accelerator pedal position sensor. *Id.* ¶ 127.

On January 18, 2019, GM filed a motion to dismiss the FAC. ECF No. 112. Plaintiffs filed their opposition on February 6, 2019. ECF No. 15. GM filed its reply on February 13, 2019. ECF No. 16. Pursuant to Local Rule 230(g), the Court determined that this matter was suitable for decision on the papers and took it under submission on February 14, 2019. ECF No. 17.

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the opposing party's pleadings. Dismissal of an action under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the pleading party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The inquiry is generally limited to the allegations made in the complaint. *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

Furthermore, Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with

particularity the circumstances constituting [the] fraud[.]" Fed. R. Civ. P. 9(b). This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*. Rather, the party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud as much as it is meant to give defendants notice of the claims asserted against them. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). When a party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper. *See Vess*, 317 F.3d at 1107("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.").

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. DISCUSSION

GM moves to dismiss the FAC's three fraudulent inducement causes of action on the grounds that: (1) each claim is barred by the statute of limitations; (2) each claim violates the economic loss rule; and (3) the Complaint fails to plead sufficiently particularized allegations to support each claim.[1] Plaintiffs respond that their FAC now pleads with sufficient particularity the elements of their fraud

---

[1] GM does not move to dismiss Plaintiffs' non-fraudulent inducement claims on any grounds.

5

claims, that their claims are timely, and that they do not violate the economic loss rule.

Under California law, the elements of fraud are: "(1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud[.]" Fed. R. Civ. P. 9(b). The party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess*, 317 F.3d at 1106 (citation omitted).

The Court finds that Plaintiffs again failed to plead with sufficient particularity the elements of each of their fraudulent inducement claims.[2] Even accepting Plaintiffs' allegations as true and making every reasonable inference in Plaintiffs' favor, the FAC does not state sufficient facts to plead their fraudulent inducement claims. Because it does not appear Plaintiffs could amend to cure these deficiencies, the fraud claims will be dismissed with prejudice.

### 1. **Fraudulent Inducement – Intentional Misrepresentation**

The Court's original Order found that Plaintiffs pleaded with sufficiently particularity the elements of knowledge of the oil consumption defect at time of sale (assuming a false representation regarding the Sierra was in fact made) and resulting damage. However, the Court found Plaintiffs failed to plead with sufficient particularity the elements of false representation, intent to defraud, and justifiable reliance. Even accepting Plaintiffs' allegations as true and making every reasonable inference in Plaintiffs' favor, Plaintiffs' FAC fails to cure these defects and thus the Fraudulent Inducement – Intentional Misrepresentation claim will be dismissed.

---

[2] Because the Court finds Plaintiffs failed to plead their fraudulent inducement claims with sufficient particularity and dismisses the claims with prejudice, the Court does not address GM's other arguments.

### a. False Representation

In the Court's initial Order on the motion to dismiss, the Court found that Plaintiffs failed to allege with sufficient particularity any false representation by GM. In response, Plaintiffs amended their complaint to add facts regarding the series of repairs from 2012-2016 and GM's assurances that the Sierra was safe to drive, ECF No. 11 ¶¶ 114-117, as well as to add an excerpt from an undated GM brochure for the 2011 GMC Sierra. ECF No. 11 ¶¶ 105, 203. The excerpt states:

> Power without compromise. The Vortec engine family has a well-earned reputation for durability, power and efficiency. These engines are developed using "vortex technology" that swirls and tumbles the incoming air and fuel mixture for enhanced performance and fuel economy. This technology helps deliver torque, smoothness and efficiency with power to spare.

*Id.* This additional excerpt is insufficient to plead the false representation element.

At the threshold, even viewing the evidence in the light most favorable to Plaintiffs, many of the representations quoted by Plaintiffs are simply non-actionable "puffery." "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1139 (C. D. Cal. 2005) (citing *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)); *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (finding the statement that the defendants "would deliver 'flexibility' in their 'cost-per-copy' contracts and that they would lower copying costs for consumers" to be non-actionable puffery); *Finney v. Ford Motor Co.*, No. 17-cv-06183-JST, 2018 WL 2552266, at *8 (N.D. Cal. June 4, 2018) (collecting examples of puffery). "To be actionable, a statement must be 'specific and measurable' and capable of being proven true or false." *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1135, 1145 (9th Cir. 1997)). Most of the additional alleged misrepresentations in the new brochure quoted in the FAC are either identical or very similar to those the Court previously found to be generalized and vague assertions. *Compare* ECF No. 11 ¶ 105

*with* ECF No. 11 ¶¶ 100, 101, 104, 105.

Furthermore, the additional brochure is undated and does not say anything about oil consumption. *See Sukonik v. Wright Med. Tech., Inc.*, No. CV 14-08278 BRO (MRWx), 2015 WL 10682986, at *15 (C.D. Cal. Jan. 26, 2015) (representation must be about the material fact at issue); *see also Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993) ("specific pleading is necessary to 'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom") (quoting *Garcia v. Superior Court*, 50 Cal. 3d 728, 737 (1990)).

But, as described as the "[m]ost significant[]" issue in the Court's prior Order, Plaintiffs again do not plead which of these alleged representations Plaintiffs relied upon in purchasing the Sierra. Plaintiffs argue that they sufficiently alleged that GM made representations through its marketing materials and its authorized agents. Yet in every single example cited by Plaintiffs, they do not plead one way or the other whether they actually reviewed the newly pleaded brochure or any other specific marketing materials prior to purchasing the Sierra, how they obtained or accessed any of the materials, or when they viewed these materials. *See* ECF No. 11 ¶ 98, 105, 108, 202-3.

Indeed, Plaintiffs do not plead that they actually relied on any of the specifically alleged representations made by marketing materials in purchasing the Sierra. *See Sukonik*, 2015 WL 10682986, at *15 ("This allegation fails under Rule 9(b) [in part] because . . . Plaintiff also fails to specify when he was exposed to the representations."); *see also Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *13 (N.D. Cal. June 1, 2018) (dismissing claims that failed to "allege[] any facts that plausibly suggest that had GM disclosed the Oil Consumption Defect they would have been aware of the disclosure. They have not pleaded that they reviewed any advertising materials before purchasing their Vehicles; nor have they alleged that they had specific interactions with GM before purchasing their Vehicles, as did the *Daniels* plaintiffs. They have not even alleged that they purchased their Vehicles from GM dealerships."). It is insufficient for Plaintiffs to plead a plethora of advertising, plead that they "justifiably and reasonably relied on Defendant's representations related to

8

the reliability of the 2011 GMC Sierra and the 5.3-L Vortec 5300 engine," ECF No. 11 ¶ 207, but wholly fail to plead *any* facts that logically link the pleaded advertising and the specific representations these Plaintiffs "justifiably and reasonably" relied upon. Accepting every reasonable inference in Plaintiffs' favor does not mean the Court can create inferences to bridge the logical gaps in Plaintiffs' FAC.

Contrary to Plaintiff's argument, this is not a situation calling for a relaxation of 9(b)'s heightened pleading requirement because "the defendant must necessarily possess full information concerning the facts of the controversy or when the facts lie more in the knowledge of the pleaded party." ECF No. 15 at 9 (quoting *Tarmann v. State Farm Mutual Auto-Mobile Ins. Co.*, 2 Cal. App. 4th 153, 158 (1992)). *Tarmann* was not applying Rule 9(b) and only analyzed California state law. But assuming for the sake of argument that exclusive knowledge calls for relaxing 9(b)'s heightened standard, the representations GM allegedly made to Plaintiffs are exactly the kinds of facts of which Plaintiffs have personal knowledge, and it is inexplicable why Plaintiffs cannot allege any facts showing a single specific representation from GM they actually reviewed and/or relied upon in purchasing the Sierra. In fact, Plaintiffs are better situated than GM to state which representations they relied upon in purchasing the Sierra, and it is Plaintiffs who arguably are the exclusive possessors of those facts. Contrary to Plaintiffs' argument, the Court is not requiring that Plaintiffs plead the names of employees who drafted the brochures at issue, but rather that Plaintiffs plead the basic facts arguably in their exclusive control, *i.e.*, what representations they relied upon.

Plaintiffs did amend their complaint to include more specificity regarding the representations by GM authorized-repair facility employees during the series of repairs that occurred from 2012 to 2016. ECF No. 11 ¶¶ 114-117. Plaintiffs failed to include any more specificity regarding the misrepresentations they actually relied upon in purchasing the Sierra.

Therefore, even accepting Plaintiffs' allegations as true and making every reasonable inference in their favor, Plaintiffs' FAC fails to establish the misrepresentation element.

### b. **Intent to Defraud**

Plaintiffs contend that they sufficiently pleaded GM's intent to defraud. Plaintiffs allege "Defendants intended that Plaintiffs rely on the foregoing representations related to the Subject Vehicle and the 5.3-L Vortec 5300 engine, including that neither had inherent and irreparable defects, and that the Subject Vehicle had superior towing capacities in inducing Plaintiffs to purchase the vehicle." ECF No. 11 ¶ 206. A plaintiff may plead intent generally. Fed. R. Civ. P. 9(b). "But allegations of intent must still meet Rule 8(a)'s plausibility standard under *Twombly* and *Iqbal*," and "threadbare recitation of the prima facie elements of a fraudulent inducement claim falls short of Rule 8(a)." *Sukonik*, 2015 WL 10682986, at *15 ("Plaintiff has not pleaded *facts* demonstrating WMT's intent to defraud . . . . Most manufacturers, if not all, make representations about their products to induce sales. Because Plaintiff has not set forth the circumstances constituting WMT's alleged fraud, the Court cannot reasonably conclude that WMT published and distributed the marketing and promotional materials *with the intent to defraud.*") (emphases in original); *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) ("[F]raudulent intent cannot be proven, however, by simply pointing to the defendant's subsequent failure to perform as promised.") (citing *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30–31 (1985)); *Icasiano v. Allstate Ins. Co.*, 103 F. Supp. 2d 1187, 1191–92 (N.D. Cal. 2000) ("Plaintiff's nebulous, retrospective allegation that Allstate never had any intention of performing its contractual obligations is insufficient under federal law."); *Hsu v. OZ Optims*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) ("Plaintiffs' complaint simply states that 'defendant OZ had no intention to be bound by the terms as agreed in the aforesaid agreements.' Plaintiffs have failed to plead fraud with specificity as required by Rule 9(b) . . . .") (internal citation omitted).

Plaintiffs' FAC failed to plead sufficiently GM's intent to defraud. As described above, Plaintiffs again failed to plead the element of misrepresentation. Plaintiffs generally fail to allege which representations they relied upon in purchasing the vehicle, who made the representations they relied upon, the content of the representations they relied upon, and when the representations they relied upon

were made. There are simply insufficient facts pleaded regarding which representations were actually made to Plaintiffs that would elucidate GM's intent to defraud.

Moreover, Plaintiffs again plead that GM intended Plaintiffs to rely on "the foregoing representations related to [the Sierra and Vortec 5300 Engine] including that neither had inherent and irreparable defects and that the Subject Vehicle had superior towing capacities"—are vague and conclusory, and not supported with sufficient factual bases, including if these are the same representations described elsewhere in the complaint, when these representations were made, how they were made, how they induced Plaintiffs to purchase the Sierra, and how they relate to the oil consumption defect. *See* ECF No. 11 ¶ 205. If there are insufficient allegations of any misrepresentation, then logically there is no misrepresentation to which GM's intent to defraud Plaintiffs can attach. Therefore, Plaintiffs fail to plead facts that permit a reasonable influence that GM made any specific representations with an intent to defraud.

      **c.**     **Justifiable Reliance**

Plaintiffs allege that they justifiably and reasonably relied on GM's representations and would not have purchased the Sierra had they known about the oil consumption defect. ECF No. 11 ¶¶ 206-209. "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or non-disclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 840 (9th Cir. 2004) (quoting *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995)) (citation omitted). While reliance upon the truth of the fraudulent misrepresentation does not need to be the "sole or even the predominant or decisive factor in influence his conduct," it must at least be a "substantial factor" in

influencing the decision. *Id.* (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 976–77 (1997)).

Plaintiffs again failed to plead the justifiable reliance element for similar reasons as the misrepresentation element: As noted repeatedly in both this Order and the Court's previous Order, Plaintiffs simply do not plead with any particularity which representations from GM they actually encountered before purchasing the Sierra. Without such allegations, there is no legally actionable representation to justifiably rely upon. *See Sukonik*, 2015 WL 10682986, at *15, *17. Plaintiffs simply do not plead that they actually relied on any specific representation from GM, much less that it was false. Moreover, without a clear representation alleged, it cannot be determined whether Plaintiffs' reliance was reasonable or justified.

### 2. **Fraudulent Inducement –Negligent Misrepresentation**

"The elements of negligent misrepresentation are similar to intentional fraud except for the requirement of scienter; in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an *intentionally* false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006). Thus, as to elements shared by negligent and intentional misrepresentation claims, Plaintiff's claim for negligent misrepresentation fails for the same reasons as described in relation to intentional misrepresentation, *supra*.

Plaintiffs' FAC once again failed to plead with sufficient particularity that GM made a claim which it lacked any reasonable ground for believing to be true. Again, it is unclear what representations Plaintiffs actually reviewed and relied upon in purchasing the Sierra, much less when the representations were made, what their content was, how they were made, who made them, and why they were false. Plaintiffs did not amend to add any new facts related to the claim GM lacked any reasonable ground for believing to be true, again only offering boilerplate language such as GM "had no reasonable grounds for believing the representations were true" and GM "was negligent in making these representations."

12

*See* ECF No. 11 ¶¶ 211, 216. Plaintiffs plead no underlying facts to support these statements. Therefore, the Court must dismiss Plaintiffs' negligent misrepresentation claim.

### 3. Fraudulent Inducement – Concealment

"Fraudulent concealment is a type of fraud or deceit that requires proof of the same elements." *Stewart*, 304 F. Supp. 3d at 905 (citing *Lovejoy v. AT & T Corp.*, 119 Cal. App. 4th 151, 158 (2004)). The elements for fraudulent concealment have been formulated alternatively as:

> (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.

*Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014). The Court previously found that Plaintiffs sufficiently pleaded the elements of a potential duty to disclose, Plaintiffs were unaware of the fact and would not have acted as they did if they had known of the concealed or suppressed fact, and suffered damage as a result. Nevertheless, Plaintiffs' FAC did not add sufficient facts to plead the elements of concealment/suppression of a material fact and intent to defraud, and thus Plaintiffs' Fraudulent Inducement – Concealment claim must be dismissed.

#### a. Concealment or Suppression of a Material Fact

"Not every omission or nondisclosure of fact is actionable." *Gutierrez v. Carmax Auto Superstores California*, 19 Cal. App. 5th 1234, 1258 (2018), *as modified on denial of reh'g* (Feb. 22, 2018). "[A]n omission is actionable . . . if the omitted fact is (1) 'contrary to a [material] representation actually made by the defendant' or (2) is 'a fact the defendant was obliged to disclose.'" *Id.* (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006), *as modified* (Nov. 8, 2006)) (analyzing omission standard under CLRA); *see also Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (same). "In order for non-disclosed information to be material, a plaintiff must show that 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Falk v.*

*Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (quoting *Mirkin*, 5 Cal. 4th at 1093).

"Alleging fraudulent omission or concealment is somewhat different from pleading an affirmative misrepresentation in that a plaintiff cannot generally plead either the specific time of an omission or the place it occurred." *Stewart*, 304 F. Supp. 3d at 906; *see also Falk*, 496 F. Supp. 2d at 1098-99 ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim."). "Despite this distinction, claims sounding in fraud, even concealment or omission claims, still must be pled with particularity." *Stewart*, 304 F. Supp. 3d at 906 (citing *Kearns*, 567 F.3d at 1127 ("the contention that . . . nondisclosure claims need not be pleaded with particularity is unavailing")). 9(b)'s heightened pleading requirement thus applies to claims of fraud by omission. *See Kearns*, 567 F. 3d at 1127.

To sufficiently plead a claim for fraudulent omission, plaintiffs must "establish a plausible method of disclosure and to establish that they would have been aware of information disclosed using that method . . . ." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015). "[T]o plead the circumstances of omission with specificity, [a] plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Eisen v. Porsche Cars N.A., Inc.*, No. 11-cv-9405-CAS (FEMx), 2012 WL 841019, at * 3 (C.D. Cal. Feb. 22, 2012); *Parenteau v. Gen. Motors, LLC*, 2015 WL 1020499, at *7 (C.D. Cal. Mar. 5, 2015) (plaintiff failed to plead sufficiently an omission where she did "not allege any contact with Defendant (as distinct from the dealer) prior to purchasing her vehicle where omissions regarding the defect at issue should or could have been revealed. Nor does she allege with any degree of specificity which advertisements, offers, or other representations she relied on that failed to include the omitted information."); *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *10 (N.D. Cal. Mar. 14, 2017) (dismissing fraudulent

omission claims where plaintiffs did "not allege that they reviewed or were exposed to *any* information, advertisements, labeling, or packaging by Defendant"); *see also Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *12 (N.D. Cal. July 7, 2015) (denying motion to dismiss where plaintiffs amended fraudulent omission claim to add particularized allegations regarding how they would have been exposed to the fraudulent omission, including "Ford's 'television advertisements concerning the vehicles,' 'material concerning the Fusion on Ford's website,' 'window sticker[s],' and 'brochure concerning the Fusion' did not include relevant information about the EPAS system and its possible failures"); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 876 (N.D. Cal. 2018) (denying motion to dismiss as to plaintiffs who pleaded they would have received the omitted information during purchase from authorized dealership, but granting motion to dismiss as to plaintiffs who failed to plead they purchased the vehicles from an authorized dealership and only offered "general allegations" concerning GM's advertising), *order clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018).

As the Court found in its original Order, Plaintiffs pleaded with sufficient detail that the omission of information regarding the oil consumption defect could be "material." Nevertheless, Plaintiffs failed to amend their complaint to sufficiently plead the full element of concealment or suppression of a material fact.

First, Plaintiffs' FAC does not add additional facts sufficiently pleading GM's omission with particularity. Plaintiffs again do not offer facts describing "where the omitted information should or could have been revealed," nor do Plaintiffs "provide representative samples of advertisements, offers, or other representations *that plaintiff relied on to make her purchase* and that failed to include the allegedly omitted information." *Eisen*, 2012 WL 841019, at * 3 (emphasis added); *see also Parenteau*, 2015 WL 1020499, at *7; *Davidson*, 2017 WL 976048, at *10. Plaintiffs did add more particular facts alleging that during the series of repairs in 2012-2016 GM continued to conceal the defect and falsely represent to Plaintiffs that it was able to fix the issue. *See, e.g.*, ECF No. 11 ¶ 198. But these allegations

15

remain conclusory, and such alleged omissions have nothing to do with what information Plaintiffs relied on at time of sale that failed to contain this information. Indeed, Plaintiffs failed to plead with any particularity facts sufficient "to establish a plausible method of disclosure and to establish that they would have been aware of information disclosed using that method." *Daniel*, 806 F.3d at 1227. In contrast to cases where a plaintiff pleaded sufficient facts to support an inference that they would have "interacted with and received information from sales representatives at authorized Ford dealerships prior to purchas[e]," *Daniel*, 806 F.3d at 1227, Plaintiffs offer a vague, passing reference. *See* ECF No. 11 ¶ 167 ("GENERAL MOTORS and its authorized dealership at which Plaintiffs purchased the subject vehicle had reason to know the purpose of the subject vehicle at the time of sale of the subject vehicle."). Plaintiffs do not otherwise offer allegations sufficient to sustain a reasonable inference that they would have been exposed to the omitted information at or prior to the time of sale. Without sufficiently pleading an underlying omission to which Plaintiffs would have been exposed in making their purchase, Plaintiffs cannot plead that GM was obligated to disclose a fact but chose to omit it.

Second, Plaintiffs' FAC fails to plead with particularity that GM actively concealed the oil consumption defect. Again, Plaintiffs failed to plead with sufficient detail what representation Plaintiffs relied upon in purchasing the Sierra. Therefore, the concealed fact – the oil consumption defect – is not "contrary to a [material] representation actually made by the defendant." *Gutierrez*, 19 Cal. App. 5th at 1258; *Daugherty*, 144 Cal. App. 4th at 834 (holding plaintiff failed to plead a fraudulent omission where "no representation was made to which the alleged concealment was contrary"). Moreover, "[a]n allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of concealment; e.g., that the defendant sought to suppress information in the public domain or obscure the consumers' ability to discover it." *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, *7 (N.D. Cal. 2013) (internal quotation marks omitted); *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, *10 (C.D. Cal. 2012) ("[I]f mere nondisclosure constituted 'active concealment,' the duty requirement would be subsumed and any material omission would be actionable."); *Czuchaj v.*

*Conair Corp.*, No. 13-CV-1901-BEN-RBB, 2014 WL 1664235, at *6 (S.D. Cal. Apr. 18, 2014) ("If this court could infer affirmative acts from mere knowledge and inaction, then active concealment would be reduced to a weakened form of exclusive knowledge.").

Plaintiffs once again rely on the conclusory language suggesting GM "knew of and concealed the existence" of the oil consumption defect, and do not provide sufficient detail of GM's affirmative acts to suppress or obscure the oil consumption defect. *Compare* ECF No. 11 ¶¶ 42, 97, 193 *with Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010) (finding plaintiffs sufficiently pleaded active concealment where specific, particularized acts and methods of concealment were alleged). Similarly, Plaintiff pleads language such as GM "attempted to suppress public recognition of the [defect] by propagating the falsehood that the excessive oil consumption . . . was normal," but offers no specific facts regarding either the suppression itself, or the details of the alleged propagation of the falsehood. *Id.* ¶ 94. "Mere nondisclosure" is not the same as active concealment. *Gray*, 2012 WL 313703, *10. Plaintiffs' FAC did add more particular facts regarding the circumstances and representations made during the series of 2012-2016 repairs. ECF No. 11 ¶¶ 114-117. This addressed some of the Court's concerns with this element. *See* ECF No. 9 at 32-33. Nevertheless, Plaintiffs' additional allegations do not plead any facts regarding an intent to deceive or to conceal the oil consumption defect in making these representations during the repairs, nor why they did not realize the problems were irreparable given the numbers of repairs for the exact same problem. And, in any event, such omissions during the 2012-2016 repairs do not permit any reasonable inferences regarding what omissions made at or before the time of sale.

Plaintiffs' opposition essentially argues that their claim for Fraudulent Inducement – Concealment was sufficiently pleaded because they showed GM had a duty to disclose a material fact of which it had exclusive knowledge. *See* ECF No. 15 at 10-13. However, Plaintiffs' Complaint does not bring a cause of action for mere nondisclosure in violation of GM's duty to disclose. Plaintiffs repeatedly plead in their Fraudulent Inducement – Concealment cause of action (and throughout their

complaint) that GM "intentionally" and "actively" concealed the facts regarding the oil consumption defect. *See, e.g.*, ECF No. 11 ¶¶ 193 (GM "Intentionally concealed and failed to disclose facts relating to the Oil Consumption Defects . . . ."), 195 (GM "actively concealed information . . . ."), 196 (GM "Had an opportunity to disclose . . . but instead concealed from and failed to disclose to Plaintiff . . . ."), 197 (GM "intended to deceive Plaintiff by concealing . . . ."), 198 (during the series of repairs GM "continued to conceal" the defect). The core of Plaintiffs' claim is fraudulent, active concealment and Plaintiffs did not amend their complaint to allege a different cause of action.

Therefore, even accepting their allegations as true and making every reasonable inference in Plaintiffs' favor, their FAC fails to plead GM's active concealment of a material fact from Plaintiffs with sufficient particularity.

### b. **Intent To Defraud by Intentional Concealment or Suppression**

Plaintiffs' FAC does not plead with sufficient particularity GM's intent to defraud, nor does it plead with sufficient particularity GM's intentional concealing or suppressing of a material fact. As described above, Plaintiffs failed to plead with sufficient particularity the element of concealment or suppression of a material fact. Without the concealment or suppression, there is no act to which intention may attach. Moreover, Plaintiffs only offer boilerplate language pleading GM's intent to defraud such as GM "intentionally concealed and failed to disclose" the defect, GM "actively concealed information," and GM "intended to deceive Plaintiff by concealing the known issues." ECF No. 11 ¶¶ 193, 195, 197; *see also id.* ¶¶ 94-99, 109. Thus, Plaintiffs did not sufficiently plead a factual basis for GM's intentional concealment or suppression, much less that it was done with an intent to defraud.

### 4. **Dismissal with Prejudice**

The Court's prior Order noted that "Plaintiffs should count on this being the last time they can amend." ECF No. 9 at 36. "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall*, 518 F.3d at 1051. Plaintiff's FAC failed to bridge critical factual and logical gaps previously identified by the Court. There is no reason why Plaintiffs cannot

reasonably be expected to plead with sufficient particularity, for example, what kinds of marketing or representations induced them to purchase the Sierra, where they purchased the Sierra, or how they learned of a specific "oil consumption defect." Yet Plaintiffs only offer conclusory and vague allegations insufficient to meet 9(b)'s heightened pleading standard. Plaintiffs' opposition does not state what facts, if any, they would allege if given another opportunity to amend. If Plaintiffs were unable to amend to allege such facts the first time, a second opportunity to amend is futile. Therefore, Plaintiffs' fraud claims will be dismissed with prejudice.

## V. CONCLUSION AND ORDER

For the reasons stated above, GM's motion to dismiss the following claims is **GRANTED with prejudice** as to Counts IV, V, and VI only.

IT IS SO ORDERED.

Dated: **March 14, 2019**     /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE